WALTER BROWN DOZIER, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent.
Dozier v. Commissioner
Docket No. 1501-78.
United States Tax Court
T.C. Memo 1982-569; 1982 Tax Ct. Memo LEXIS 176; 44 T.C.M. (CCH) 1274; T.C.M. (RIA) 82569; September 29, 1982. Walter Brown Dozier, pro se, and Gary L. Moore for the petitioner. Elaine T. Moriwaki, for the respondent. WILBUR
MEMORANDUM FINDINGS OF FACT AND OPINION WILBUR, Judge: Respondent determined a deficiency of $134 in petitioner's Federal income tax for the 1975 taxable year. The issue for decision is whether petitioner may deduct, as an interest expense, a "loan origination fee" paid to a bank in connection with a loan guaranteed by the Veteran's Administration. FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulation of facts and exhibits attached thereto are incorporated herein by this reference. Petitioner resided in San Clemente, California, at the time of the filing *177 of the petition herein. Petitioner filed a Federal income tax return for the 1975 taxable year with the Internal Revenue Service. On or about January 28, 1975, petitioner purchased a home in Fullerton, California, for a total price of $49,500. The entire purchase was financed through a home mortgage loan at an annual interest rate of 8.5 percent obtained from Home Savings and Loan (HSLA) and guaranteed by the Federal Government through the Veteran's Administration (VA). HSLA charged petitioner a loan origination fee equal to 1 percent of the full amount of the loan ($495). The loan origination fee charged to petitioner was accounted for internaelly by HSLA as a part of the general income fund. In addition to the loan origination fee, petitioner was charged separately for a credit report ($9.55), recording fees ($9), a VA appraisal fee ($45), title insurance ($58.50), tax service ($16.50), and his allocable portion of taxes for 1975. In connection with a VA insured loan, Federal regulations permitted the lender to collect from the veteran-borrower a flat charge not exceeding 1 percent of the amount of the loan in lieu of all other charges relating to costs of origination. *178 38 C.F.R. sec. 36.4312(d)(2) (1981). The lender was also allowed to separately charge for certain items in addition to the 1 percent fee. These charges included VA appraisal and compliance inspection fees, recording fees, credit reports, the borrower's allocable portion of the current year's taxes and assessments, hazard insurance, surveys and title examinations. 38 C.F.R. sec. 36.4312(d)(1) (1981). The seller of the property was charged a discount on petitioner's loan equal to 3 percent of the face amount of the loan ($1,485). The discount points charged the seller were dependent upon HSLA's interest yield requirements and were designed to bring the interest rates and overall charges on a VA loan more closely in line with the market rate for conventional loans. The maximum allowable annual rate of interest on VA loans was 8.5 percent in 1975. The annual interest on conventional loans was 9.25 percent at the time petitioner obtained his loan. The loan origination fee ($495) charged by HSLA covered the HSLA loan agent's commission, and the costs attendant to the loan handling processes. A loan origination fee, also *179 computed as a percentage of the loan, is also charged to the buyer on a conventional loan, along with a flat fee varying with the amount of the loan. The loan agent is a HSLA employee and is responsible for seeking out new loan applicants for real estate loans. The agent is not paid a salary, but receives a commission for each loan deal initiated and successfully concluded. The loan agent responsible for securing petitioner's loan received a commission of $247.50. The commission is calculated at a percentage of the total points payable on the loan, including the discount charged the buyer and the loan origination fee charged to the seller. The commission on a conventional loan is computed in a similar manner. HSLA employees within the escrow department, not the loan agent, supervise and conduct the loan handling process, such as arranging for the recordation of documents in the loan transaction and supervising the closing of the loan to insure that all necessary steps in processing the loan have been taken. The loan handling process involves preparing and mailing documents required by HSLA's internal regulations as well as by state and Federal statutes and includes written *180 correspondence to various third parties such as the Veteran's Administration, the title company, and the escrow company. HSLA was required by the VA to prepare and submit certain applications and certificates to the VA for approval of the loan and the loan guarantee. The application and certificates include: (a) Application for VA property appraisal; (b) Application for firm commitment from the Veterans' Administration for the loan guarantee; (c) Verification of employment; (d) Verification of deposit; (e) Credit report on veteran; (f) Certificate of reasonable value of property; (g) Certificate of disbursement of loan proceeds; (h) Certificate of veteran's eligibility. A conventional loan situation does not necessitate the coordination of HSLA's loan application process with the loan application requirements of a third party comparable to the Veteran's Administration. HSLA has never computed the cost differential between processing a VA loan and a conventional loan. OPINION The issue to be decided herein is whether petitioner may deduct, as an interest expense under section 163, [1] a 1 percent fee paid to HSLA in connection with a VA loan. *181 Section 163(a) allows a deduction for "interest paid or accrued within the taxable year on indebtedness." For Federal income tax purposes, interest is generally defined as "compensation for the use or forbearance of money." Deputy v. du Pont,308 U.S. 488, 498 (1940). Payments for specific services rendered by a lender in connection with a loan do not qualify as interest under section 163. Goodwin v. Commissioner,75 T.C. 424, 441 (1980), affd.     F. 2d     (3d Cir. 1982); Wilkerson v. Commissioner,70 T.C. 240, 253-257 (1978), revd. on other grounds 655 F.2d 980 (9th Cir. 1981). The characterization of a payment as interest on indebtedness or a service fee is controlled by the facts, not terminology. Wilkerson v. Commissioner,supra at 253; L-R Heat Treating Co. v. Commissioner,28 T.C. 894, 897 (1957). The "loan origination fee" at issue herein was computed by the lender at 1 percent of the principal amount of the note. Although in 1975 the maximum allowable annual rate *182 of interest on VA loans was 8.5 percent, Federal regulations permitted the lender to collect from the veteran-borrower a flat charge not exceeding 1 percent of the amount of the loan, in lieu of all other charges relating to costs of origination. 38 C.F.R. sec. 36.4312(d)(2) (1981). However, the lender was allowed to separately charge for certain items in addition to the 1 percent fee. Id. These charges included VA appraisal and compliance inspection fees, recording fees, credit reports, the borrower's allocable portion of the current year's taxes, assessment, etc., hazard insurance, surveys, and title examination. 38 C.F.R. sec. 36.4312(d) (1) (1981). In the instant case, HSLA charged the 1 percent fee in addition to separately stated charges allowable under VA regulations. The 3 percent discount charged the seller is clearly intended, insofar as the lender is concerned, to bridge the gap between the market rate of interest and that permitted by the VA, and accordingly is the functional equivalent of interest. [2] The 1 percent charged the buyer is also computed on the amount loaned and is in some respects similar although *183 termed a loan origination fee. But the stipulation removes this superficial similarity by providing in unmistakably clear language that "the loan origination fee ($495.00) charged by HSLA covered the HSLA loan agent's commission, and the costs attendant to the loan handling process." In regard to the costs of the loan handling process, the parties have stipulated that "a conventional loan application process with the loan application requirements of a third party comparable to the Veteran's Administration." This record then is quite different from the one in Pacific First Federal Savings and Loan Association v. Commissioner, 79 T.C.     (Sept. 23, 1982). On the facts before us, it is clear that the fee before us was not interest paid for the use of money. The loan agent, an employee of HSLA, generally seeks out new loan customers and thereafter screens and processes the real estate loan application. The agent's commission with respect to petitioner's loan, determined as a percentage of the total points payable on the loan, was $247.50. The loan handling process required that HSLA *184 prepare and submit certain applications and certificates to the VA for approval of the loan and the loan guarantee. Some of these costs involved in the loan handling process are peculiar to VA loans which necessitate the coordination of the lender's loan application process with the requirements imposed by the VA. Petitioner contends that the fee is deductible as interest since it was charged by the bank in lieu of a higher annual interest rate. We disagree. The testimony of William Thompson, senior vice-president and loan-operations supervisor of HSLA, reflects that the 3 points charged the seller of the residence was designed to bring the interest rates and overall charges on a VA loan more closely in line with the market rate for conventional loans. There was little flexibility, however, with the fee charged to the buyer-borrower. The borrower was charged 1 point regardless of the money market. Compare Metropolitan Mortgage Fund, Inc. v. Commissioner,62 T.C. 110, 119 (1974). Thus, unlike the 3 percent fee charged the seller, the fee charged the borrower was not imposed by the lender in lieu of a higher interest rate. That the amount of the fee was computed *185 as a percentage of the loan amount and thus bore no direct relation to the actual cost of specific services performed does not support an "interest" classification since the 1 percent charge is an artificial ceiling prescribed by VA regulations--the charge could be up to 1 percent of the loan. In Wilkerson v. Commissioner,supra, on the basis of testimony as to specific services and their estimated value this Court characterized a portion of a 2 percent fee paid to a construction lender as interest and the balance as payment for services. [3] In Goodwin v. Commissioner,supra, however, where there was evidence of specific services and testimony by bank officials that the fee was intended to cover costs of processing and administrating the loans, this Court found that a 1 percent "initial service charge" imposed by a lender in connection with an FHA loan was wholly for services. [4]
*186 In the instant case, the parties' stipulation that the 1 percent "loan or origination fee" covered the cost of certain specific services performed by HSLA controls our determination herein that the fee represents payment for services. Petitioner has not presented any persuasive evidence that the fee was an additional cost of borrowed money. Rather, petitioner insists that the fee constitutes interest since the charge was primarily for the benefit of the lender and the borrower received no significant benefit other than the granting of the loan. Petitioner apparently argues that from the borrower's point of view, the charges are another cost of obtaining the funds and are thus deductible as interest under section 163. Petitioner's argument, although appealing, loses sight of the focus herein. All charges paid by the borrower are prerequisites for obtaining a loan but are not necessarily deductible as interest. Only those fees which are imposed by the lender as compensation for the use of borrowed money qualify as interest. Thus, "interest" may include "points" which are imposed by the *187 lender in lieu of a higher interest rate. See Wilkerson v. Commissioner,70 T.C. 24, 253-257 (1978), revd. on other grounds 655 F.2d 980 (9th Cir. 1981). However, this Court has recognized that if such payments are for specific services performed by a lender in connection with a loan, they do not constitute compensation for the use or forbearance of money. Goodwin v. Commissioner,75 T.C. 424, 441 (1980); Wilkerson v. Commissioner,supra; Lay v. Commissioner,69 T.C. 421 (1977). See also Metropolitan Mortgage Fund, Inc. v. Commissioner,supra.As we stated in Goodwin v. Commissioner,supra at 441-442: In our view, it is irrelevant whether the borrower derives any "direct benefit" from the services performed, for, in either case, the ultimate benefit which the borrower receives is the loan itself. The fact remains that charges for services performed by the bank in connection with a loan do not represent compensation for the use of the funds advanced. Accordingly, we hold *188 that the 1 percent fee paid to HSLA was a charge for services and not deductible as interest under section 163. Decision will be entered for the respondent.
Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended and in effect for the taxable year involved, unless otherwise indicated.↩
2. As to the seller, see Hunt v. Commissioner,T.C. Memo. 1965-172↩.
3. In Lay v. Commissioner,69 T.C. 421↩ (1977), we held that a similar 2 percent finance fee paid to the mortgage bankers who initiated the loans were brokerage and commission fees and not interest. However, in that case the mortgage bankers did not lend any of their own money but immediately assigned their in-interest to permanent lenders who funded the construction loan. 4. In Metropolitan Mortgage Fund, Inc. v. Commissioner,62 T.C. 110↩ (1974), we found that a 1 percent charge paid to a mortgage banker by the borrower represented payment for services and not interest and thus held that the amount paid for services was taxable to an accrual basis taxpayer at the time the loan was consummated. While the services versus interest issue was determined only for the purpose of deciding the mortgage banker's taxable year of inclusion, our resolution of the character of the fee therein is certainly relevant to our determination in the instant case.